***********
The undersigned have reviewed the prior Opinion and Award based on the record of proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties pursuant to their Pre-Trial Agreement at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff at all relevant times herein.
3. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. The dates of plaintiff's injuries by accident are September 9, 1997, February 15, 1999 and April 30, 1999.
5. Plaintiff's average weekly wage at all relevant times was $456.98, yielding a compensation rate of $304.66.
6. The parties have stipulated and the undersigned receives into evidence the following:
a. I.C. Forms No. 19, 25R, 21, 18, 33, 33R, MSC4, 18.
 b. Plaintiff's Responses to Defendants Interrogatories and Request for Production of Documents.
 c. Medical records of Kristin M. Gowin, M.D., Asheville Arthritis Center (10 pp).
 d. Medical records of Lacy E. Thornburg, M.D., Carolina Hand Surgery Associates (24 pp).
e. Medical records of Russell A. Flint, M.D. (3 pp).
 f. Medical records of William Fowler, M.D., McDowell Family Medicine (11 pp).
g. Medical records of John de Perczel, M.D. (6 pp).
h. Medical records of ProActive Therapy (4 pp).
 i. Medical records of Thomas Rhem, DPM, Appalachian Foot Ankle Assoc. (5 pp).
 j. Medical records of Eric L. Rhoton, M.D., Mountain Neurological Center (11 pp).
k. Medical records of Sloop Memorial Hospital (3 pp).
l. Medical records of E.H. Smith, M.D. (41 pp).
m. Medical records of Spruce Pine Community Hospital (17 pp).
7. The issue to be determined by the Commission is as follows:
 Whether plaintiff is entitled to any additional workers' compensation benefits?
 ***********
All stipulations that have been submitted by the parties are hereby incorporated by reference as though they were fully set out herein.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission makes the following:
 FINDINGS OF FACT
As of the date of the hearing before the deputy commissioner, plaintiff was 50 years old with a tenth grade education and had worked for defendant-employer, Coats American, as a winder operator for approximately four years.
Plaintiff sustained an admittedly compensable injury on September 9, 1997 wherein she sustained an injury to her right arm while in the normal course of her duties. As she extended her right arm, she felt a sharp pain in her right upper arm. Defendants admitted the compensability for this case by filing a Form 21 agreement dated April 22, 1999, and in which they admitted plaintiff retained a 12 percent permanent partial impairment to her right arm.
As a result of her right shoulder injury, plaintiff continued to have intermittent right shoulder problems and ultimately came to be seen by Lacy Thornburg, M.D., an upper extremity specialist of Asheville, NC. Plaintiff ultimately underwent a right arthroscopic acromioplasty and repair of a rotator cuff tear on August 4, 1998. Plaintiff continued to follow up with Dr. Thornburg.
Subsequent to her surgery, plaintiff was returned to work with restrictions of no use of her right hand at work. By her return visit on September 21, 1998, plaintiff's post-surgical restrictions were to use her right hand as an assist only, lifting no more than five pounds with no repetitious work and no vibrating tools.
Plaintiff was given a prescription for aquatic therapy and follow up appointment. By October 19, 1998, Dr. Thornburg continued plaintiff's work restrictions indicating she continued to complain of lateral elbow pain. Plaintiff's one-handed work restrictions were continued in November 1998 and such limitations were faxed to the company nurse, Carol Poplin. Specifically, Dr. Thornburg noted "no restrictions on hours, light duty. No use of right hand overhead, no repetitious use, no vibrating tools."
As a result of her admittedly compensable right shoulder injury and restrictions, plaintiff was assigned to a new service job, which required her to lift up to 50 pounds, and also required her to reach with her arms outstretched for 66% of her normal workday. The service job required plaintiff to perform various cleaning duties, including mopping, vacuuming, and restacking cloth.
On December 14, 1998, plaintiff was reported to be much improved and was released without restrictions with a follow up visit in approximately three months.
On February 15, 1999, plaintiff was sitting on a stool cleaning a machine when the stool flipped backwards causing plaintiff to land with her left hand extended attempting to catch her fall. Plaintiff sustained injuries to her tailbone and reported right leg numbness.
On March 22, 1999, plaintiff was seen by Dr. Thornburg at which time he rendered an opinion that plaintiff retained a 12 percent permanent partial impairment to her right upper extremity. Dr. Thornburg also reported that plaintiff was able to do her normal work but was doing a lot of work with her left hand as a consequence of which she had suffered from occasional transit numbness in her ring and small fingers.
On April 22, 1999, the parties entered into a Form 21 agreement in which they agreed plaintiff would be paid in the sum of $8,606.02 based on her 12 percent impairment, an average weekly wage of $448.21, yielding a compensation rate of $298.82.
On April 30, 1999, plaintiff was assigned to 15 trucks moving 200 packages each truck of fabric weighing approximately five pounds each. Her job required her to reach out and grasp each package of fabric with both hands, twist at the waist and reach with her arms outstretched and restack fabric on her opposite side. She continuously repeated this activity for approximately one hour until her right arm, which had been previously surgically repaired, became fatigued and she began to use her left arm more extensively. Plaintiff subsequently completed moving the approximately 3000 packages of fabric and within a few minutes after finishing movement of the fabric, plaintiff was walking through the plant and developed severe stabbing pain in her upper back and neck, describing the pain as if someone had shot her.
Defendant-Employer then summoned emergency medical personnel and plaintiff was taken to the Cannon Memorial Hospital emergency room where she reported standing at work, suddenly felt a "blow" to the back of neck like something hit her. She then experienced chest pains with severe pain in the back of neck radiating into her left arm with numbness in both arms as well as pain in her anterior chest. Examination of the neck revealed tenderness over the base of the neck and over the left neck laterally with muscle spasms, worse over the C6-7 area. Original diagnosis reported to be a "possible cervical disk." MRI scan was performed on May 1, 1999 at Cannon Memorial Hospital and reported midline disc protrusion at C4-5. Plaintiff was discharged into the care of her physician, Dr. E.H. Smith, advised to remain out of work for one week, and noted to continue to suffer from tenderness over her left scapula area with decreased pain.
Plaintiff, thereafter, followed up with Dr. Smith on May 6, 1999 and continued to suffer from left arm pain and numbness radiating to her elbow with continued scapular pain, which had improved. She was given a recommendation for home traction with a return visit in one week at which time she would be referred to a neurosurgeon if no improvement was made.
Dr. Smith again evaluated plaintiff on May 13, 1999 with continued pain in her low cervical spine, a burning sensation down her left arm with numbness in her left shoulder. She was given a continued out of work note for two additional weeks. When plaintiff was examined on May 22, 1999, she continued to have pain in her neck on the left with some left scapular pain and numbness into her left arm. She was felt to suffer from cervical disc syndrome and given a note to remain out of work for two additional weeks. Plaintiff continued to follow up with Dr. Smith on June 10, June 11 and June 14 during which she continually and consistently reported pain and numbness in her neck and left arm. On May 14, Dr. Smith completed a disability form from the employer, Coats American.
Plaintiff was evaluated by a neurosurgeon, Dr. Eric Rhoton, who noted continued complaints of neck and arm pain on the left. Based on examination, Dr. Rhoton noted decreased sensation on her lateral arm around the C5-6 area. He also reported "slight decrease in biceps and the deltoid muscles on the right secondary to pain in the right shoulder, secondary to rotator cuff repair." Upon examination, Dr. Rhoton reported his impression to be neck and left arm radicular pain of a myofascial origin. Dr. Rhoton also recommended possible vascular etiology and ordered additional diagnostic work ups to rule out such possibilities. Dr. Rhoton also indicated plaintiff was disabled for an undetermined period of time.
Plaintiff saw Dr. Rhoton on June 30, 1999 indicating she complained of pain in her right shoulder extending up the right side of her head with occasional headaches. Dr. Rhoton noted that plaintiff had previously suffered a right shoulder injury and right surgical repair from which "plaintiff continued to experience pain and tenderness in that shoulder as well as decreased strength in the right shoulder." The vascular diagnostic studies were reported as normal. Based on this, Dr. Rhoton's diagnoses was cervicalgia pain and myofascial pain. Dr. Rhoton noted that he scheduled physical therapy to assist with her pain and muscle spasms which plaintiff was experiencing.
Plaintiff was seen by Dr. Rhoton on July 29, 1999 with continued complaints of right shoulder and right sided neck pain. Based on his examination and diagnostic studies, Dr. Rhoton determined there was no surgical treatment recommended and returned plaintiff to her physician, Dr. Smith for follow up treatment.
Plaintiff continued under the care of Dr. Smith with continued complaints of pain in her shoulders, with new complaints of pain in her back and knees. Plaintiff subsequently developed pain in all of her joints with moderate swelling, tenderness to her shoulders, wrists, hands and knees and was referred for an evaluation by Dr. Kristin Gowin of the Asheville Arthritis Center. Plaintiff was seen by Dr. Gowin on January 13, 2000 and diagnosed as suffering from fibromyalgia. By February 3, 2000, Dr. Smith stated "Ms. Riddle is under my care. She is not able to work. She has not been able to work since 5-1-99." Based on her examination, Dr. Gowin stated in her opinion "the timing of it (fibromyalgia) would make me think it was more likely related to this overuse that she had at work." Dr. Gowin also stated that plaintiff's prior 1997 injury, coupled with her repetitive job duties which required prolonged use of her arms outstretched in front of her and the overuse of her left shoulder muscles due to her right rotator cuff surgery, caused change in work habits so that plaintiff had another injury that resulted in chronic pain that contributed to the onset of her fibromyalgia. Dr. Gowin explained that the "other injury" consisted of "things including use of her left shoulder muscles which were not used to taking the strain of a right handed person."
Dr. Rhoton also testified based on plaintiff's 1997 right shoulder injury, her right rotator cuff repair, the limited use of her right arm, the job duties which required repetitive use of her arms outstretched in front of her for over two-thirds of her normal work day, and the described work duties of April 30, 1999, moving over 3000 packages of fabric "lead to, or caused, or exacerbated the symptoms that she ultimately developed." Dr. Rhoton also testified that based on his evaluation of June 30, 1999, in his objective observation of plaintiff's muscle spasms in her upper back, neck and shoulders, the repetitive straining which plaintiff alleged on April 30, 1999 "certainly would go along with the diagnosis of cervical myofascial, you know, myofascial injury."
As a direct and proximate consequence of plaintiff's September 9, 1997 shoulder injury, arthroscopic surgical repair, and resultant continuing weakness in pain in her right shoulder, plaintiff was required to overuse her left arm and shoulder while performing her altered job duties in the "service" position which required her to use her arms reaching extended away from her body for over two-thirds of her normal work day, and on April 30, 1999, required her to overuse her left shoulder during the movement of approximately 3000 packages of fabric weighing ten pounds each. As a result of such overuse, plaintiff developed severe upper back, left arm, left shoulder and neck pain, which resulted in her admission to Cannon Memorial Hospital.
Plaintiff continued to suffer from upper back, left neck, shoulder and arm pain, which were subsequently diagnosed as fibromyalgia by Dr. Kristin Gowin and by Dr. Eric Rhoton. As a result of her ongoing upper back, neck, shoulder pain and fibromyalgia, plaintiff has been unable to work as a result of the overuse of her left arm on April 30, 1999, and continues to be unable to work.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising in the course of employment with defendant employer on September 9, 1997 to her right shoulder. N.C. Gen. Stat. § 97-2(6).
2. After the surgical repair to plaintiff's right shoulder, and subsequent overuse of her left arm and shoulder, plaintiff has been unable to work and is entitled to temporary total disability benefits as of April 30, 1999 and continuing. N.C. Gen. Stat. § 97-29.
3. Plaintiff's upper back, left arm, left shoulder and neck symptoms and fibromyalgia were directly and proximately caused by plaintiff's admittedly compensable right shoulder injury and subsequent overuse of her left upper extremity. In workers' compensation actions, the rule of causation is that where the right to recover is based on injury by accident, the employment need not be the sole causative force to render an injury compensable. Hansel v. Sherman Textiles, 304 N.C. 44,283 S.E.2d 101 (1981). As a result, plaintiff is entitled to reasonable and necessary medical care for her upper back, left arm, left shoulder and neck symptoms and fibromyalgia so long as such care is reasonably necessary to effect a cure, give relief or lessen disability. N.C. Gen. Stat. § 97-25.
5. Plaintiff's treatments with Cannon Memorial Hospital, Dr. E.H. Smith, Dr. Eric Rhoton and Dr. Kristin Gowin were reasonably necessary to effect a cure, give relief or lessen plaintiff's disability which resulted from the upper back, left arm, shoulder, neck and fibromyalgia problems. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
Subject to attorney's fees hereinafter approved, defendant shall pay plaintiff total disability benefits at the rate of $304.66 per week beginning May 1, 1999 and continuing until such time as plaintiff returns to work earning the same or greater wages as plaintiff was earning at the time of her injury, or until further ordered by the Industrial Commission.
Any benefits owing to the plaintiff, which have now accrued shall be paid to plaintiff in a lump sum subject to plaintiff's attorney fee as hereinafter provided.
Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury when bills for same have been submitted to and approved by the Industrial Commission, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability.
Additionally, defendant shall pay all medical expenses incurred by plaintiff for treatment of her upper back, left arm, shoulder, neck and fibromyalgia conditions at Cannon Memorial Hospital, Dr. E.H. Smith, Dr. Eric Rhoton and Dr. Kristin Gowin as was reasonably necessary to effect a cure, give relief or lessened plaintiff's disability.
Plaintiff's attorney is entitled to twenty-five percent (25%) of any benefits presently owing to the plaintiff; said attorney's fee shall be paid directly to plaintiff's attorney in a lump sum from the accrued amounts and thereafter plaintiff's counsel shall receive every fourth check.
Defendants shall pay the costs of this action.
This the 26th day of June 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER